# The North American Mining Co. *versus* Clarke.

*Rights of Stockholders on Dissolution of Corporation.—Power of Majority as to Distribution of Assets.*

By the articles of agreement, the stockholders of a mining corporation provided that nine-tenths of· the stock, representing the property, should be liable to *assessments* for the purpose of developing mines, carrying on work, &c., the balance of the stock to remain the property of the corporation until sold, and to " be and remain for ever *unassessable;*" that dividends of *profits* should be declared and paid, after the whole amount of assessments on assessed shares shall be reimbursed to the holders ; that the directors should, as soon as the condition of the funds and the interest of the company would permit, *reimburse* said assessed shareholders, out of any surplus money on hand, &c.; no provision was made for dissolution and division of the corporate property: the business being unprofitable, the stockholders voted to dispose of their property and distribute the proceeds: on sale and division, the holders of *assessed* shares claimed that their assessments were to be repaid before any dividend was applied to the unassessed stock.

*Held,* that each class were to have an equal proportionate share in the distribution, as the preference given to the holders of *assessed* stock, was in carrying on the business, and to be " out of the profits," or " arising from surplus funds," and there being no profits nor excess above the capital stock, they were not entitled to any preference in closing up the affairs of the corporation.

ERROR to the District Court of *Allegheny county*.

This was an action of *assumpsit,* brought to November Term 1860, by L. W. Clarke, trustee, &c., against The North American Mining Company, of Detroit, in which the following case was stated for the opinion of the court :—

On the 28th day of April 1845, Gurdon Williams and fourteen other gentlemen, most of them residents of the state of Michigan, entered into articles of agreement, constituting a joint stock association, under the name and title of " The North American Mining Company," for the purpose of securing locations, and mining for copper and other minerals in the Lake Superior region.

By the agreement, they made the officers of the company to consist of a president, treasurer, secretary, and seven directors ; and chose Gurdon Williams president and treasurer, and H. J. Buckley secretary.

They vested the property of the company then held, or to be acquired, in the board of directors, and divided it into three thousand shares—making twenty-seven hundred of those shares liable to assessments, when deemed advisable by the board, for the purpose of· developing mines and carrying on work, and for their transfer by the owners, for the keeping of a record, the

appointment of agents, the compensation of directors, the annual election of officers, the voting by proxy, &c.

Article VII. thereof is as follows: Three hundred shares of the stock of the association, to wit: "Those numbered from twenty-seven hundred and one to three thousand, both inclusive, shall be and continue the property of the association until disposed of by the directors, as hereinafter provided for, and the same shall be and remain for ever unassessable, and so expressed on the certificate thereof."

Article VIII. provided that no shareholder shall be liable to pay any debt, or be bound for any contract made by the company, except "by the mode provided of assessment on shares," and any shareholder may exempt himself from the assessments by relinquishing his shares.

Article X., in providing for compensation of directors, says it shall be "from the earnings and profits of the business of the association, after paying all expenses incurred." Then follows this clause: "They (the directors) shall, from time to time, declare and pay out dividends of profits (if any such there be) to the several shareholders; but no such dividends shall be made until the whole amount of assessments on assessed shares shall have been reimbursed to the holders of the assessed shares. And the directors shall, as soon as the condition of the funds, and a due regard to the interests of the company, shall permit, reimburse said assessed shareholders out of any surplus money on hand."

The said articles of association were signed and sealed by said Williams and the others, and the number of shares belonging to each set opposite to their signatures, amounting to the two thousand seven hundred shares.

The company proceeded with its purpose—bought machinery, employed miners, &c., and, at a meeting of the board of directors, at Detroit, July 18th 1845, a resolution was adopted that the three hundred shares of unassessable stock be sold, or such portion thereof as was necessary to raise funds to purchase another tract of land, and that Sturman Stearnes be made agent to sell the same "in the best manner possible for the interest of the company."

It appears by the minutes, that on the same date twenty shares of unassessable stock were sold to said Stearnes at $25 per share, and the balance, two hundred and eighty shares, sold to him conditionally at $16 per share. The two hundred and eighty shares were afterwards returned to the company. See, for the facts, Minute-Book, Vol. 1st, pages 3, 4, 5, and 6. Other provisions were made at different times for the sale of this unassessable stock.

By the minutes of the company, pages 17 and 18, it appears

4 Wr.—28

that the stock of the company was increased to six thousand shares—both the assessable and unassessable being doubled, and the shares of each holder being thereby doubled. This was done in the fall of 1847.

. The Michigan legislature, by an act approved March 28th 1848, incorporated the company, making the capital stock $300,000, divided into shares of $50 each, with the usual powers. This charter was accepted by the company. This act is found in pamphlet No. 2, herewith filed; and in the by-laws in same pamphlet,

Article II. is as follows: "The shares of capital stock numbered from 1 to 2700; and from 3001 to 5700, inclusive, shall be subject to all assessments levied or to be levied by the directors of the company. But the shares numbered from 2701 to 3000, and from 5701 to 6000, inclusive, each shall be for ever exempt from assessment."

By act of Michigan legislature, approved June 28th 1851, the charter of the company was amended, increasing the number of shares to 10,000. The amendment was accepted by the company, and the shares fixed at 9000 assessable and 1000 unassessable, preserving thus the same proportion, and reducing the par value to $30 per share.

Article XI. of the by-laws in said pamphlet, No. 2, is as follows: "The directors shall have the general supervision and control of the interests of the company. They shall have power to lay assessments, purchase real and personal property for the benefit and in the name of the company; employ all agents and labourers necessary in the prosecution of the business of the company, and to dispose of all products of the mines belonging to the company to the best advantage thereof; and it shall be their duty to report to the shareholders, in detail, at each annual general meeting, the condition of the finances, and all and singular the affairs of the company, and at the same time furnish an estimate of the operations and probable expenditures for the year then next ensuing; declare and pay dividends of the capital stock as soon as the funds will permit; *provided* that no dividends shall be allowed or declared on the unassessable shares heretofore designated, until the amount of assessments paid on the assessable shares shall have been refunded to the holders thereof; and in all things carefully supervise and manage the concerns of the company."

In the amended by-laws of said company, as amended March 5th 1855, in Article 2, provision is made for issuing certificates to holders of the unassessable stock—still declared for ever exempt from assessments—and changes the mode of numbering and designating or marking them; and that the stock-ledger shall exhibit the names of the holders of said unassessable certificates of stock.

[North American Mining Co. v. Clarke.]

Article 10 of said amended by-laws is as follows: " They (the directors) shall have power to levy assessments, purchase real and personal property for the benefit and in the name of the company, and they shall have power to sell the same, except the real estate, which they shall not have power to sell, but may lease such portion of the surface only as in their opinion may conduce to the true interests of the company, for private residences, &c.; and they shall have power to employ all agents and labourers necessary in the prosecution of the business of the company, and to dispose of the products of the mine or mines belonging to the company, to the best advantage thereof, and it shall be their duty to report in detail to the stockholders, at each annual general meeting, the condition of the finances, and all and singular the affairs of the company, and at the same time furnish an estimate of the probable expenses for the then next ensuing year, declare and pay dividends on the capital stock as soon as funds will permit." The same provision as in previous quotation.

The original articles of association, the by-laws from time to time adopted, and the amended by-laws, all provide that the said by-laws and articles may be altered, amended, suspended, or repealed by a vote of two-thirds in interest present at any meeting of the stockholders.

Article 15th of the by-laws of 1855, is as follows: " The foregoing by-laws may be altered, amended, suspended or repealed by a vote of two-thirds in interest present in person or by proxy at any meeting of the stockholders of which notice shall have been given as provided in article sixth."

This unassessable stock was sold in portions at different times by the company, some of it selling as high as $55 per share. It was at length all sold except forty-two shares, and is now owned by individuals. Annexed is a list of the owners and their shares, as appears by the stock-ledger.

| Shares. | | Shares. | |
|---|---|---|---|
| 2 | J. H. Adams, Boston. | 2 | Porter Kibbee, Detroit. |
| 20 | H. H. Brown, Detroit. | 9 | B. B. Morris, Pontiac. |
| 13 | W. H. Brown, " | 55 | Jas. O'Hara, Pittsburgh. |
| 6 | C. M. Chester, Pontiac, Mich. | 20 | Harvey Park, Pontiac, Mich. |
| 6 | J. D. Farnsworth, Boston. | 226 | W. Palmer, Pittsburgh. |
| 74 | H. J. Buckley, Detroit. | 25 | J. W. Price, Hillsboro', O. |
| 5 | S. Ball, Jr., Boston. | 23 | Geo. S. Rice, New York. |
| 272 | L. W. Clarke (Trust.), Boston. | 10 | Isaac Thatcher, Boston. |
| 21 | Sarah S. Drake, Pontiac, Mich. | 10½ | Fred. Wetmore, Detroit. |
| 5 | J. R. Grant, Detroit. | 10 | Gurdon Williams' estate, do. |
| 14 | J. Hanna (Trust.), Pittsburgh. | 21½ | Wm. Waugh, Smith's Ferry. |
| 4 | Hanna, Garretson & Co., Detroit. | 82 | W. S. Williams, Detroit. |
| 19 | Francis Howe, Boston. | 42 | Company's Stock, Pittsburgh. |
| 23 | Edward Jennings, Ontonogan. | | |
| | | 1000 | |

[North American Mining Co. *v.* Clarke.]

A large amount of money was expended in the operations of the company, the assessable stock having been assessed at different times to nearly or quite thirty dollars per share. But the operations were not successful, and in the spring of 1860, it was proposed to sell the mines, the whole property, real, personal and mixed.

At a stockholders' adjourned public meeting held at Pittsburgh, pursuant to due notice, on the 4th day of April 1860, the following resolutions were offered for the consideration of the stockholders :—

" 1. Resolved, That the Directors of the North American Mining Company, of Detroit, be and they are hereby authorized and instructed to sell at public auction to the highest and best bidder all the property and estate, real, personal and mixed, belonging to said company, and to convey the same to the purchaser or purchasers by proper deeds or assurances; said sale to take place on Wednesday, the 6th day of June next, at 10 o'clock, A. M., at the Merchants' Exchange, in the city of Pittsburgh, Pennsylvania, on the following terms, to wit: One-fourth of the purchase-money to be paid in cash, one-fourth in one year, one-fourth in two years, and one-fourth in three years, with interest on each of said payments; the deferred payments to be secured by bond and mortgage on the said property, public notice of said sale to be given by advertisements in one or more newspapers published in New York, Boston, Detroit, and Pittsburgh."

" 2. Resolution, That after the payment of the debts of said North American Mining Company, including the expenses of said sale, the residue of the proceeds thereof, when received, be divided *pro rata*, among the stockholders of the said company."

A stock vote was called on the foregoing resolutions, which resulted as follows :—

| | | |
|---|---|---|
| For the sale | . | 5579 votes. |
| Against the sale | . | 644 " |
| Majority for sale | . | 4935 " |

So the resolutions were declared adopted. A small portion of the unassessable stock was voted on these resolutions, they having equal right to vote. Pursuant to these resolutions and notice, the property was sold to Thomas M. Howe, trustee, for $100,100, and the hand-money paid to the directors, to wit, $25,025.

Thereupon, the directors declared a dividend of $2.25 per share upon the whole 10,000 shares. Before the money was paid a few of the holders of assessable stock entered, in June 23d 1860, a protest or notice against the payment of any portion of the money to the unassessable stock.

[North American Mining Co. v. Clarke.]

In consequence of this, the directors have paid no portion of the money to the holders of the unassessable stock, but have retained it on deposit, and this suit is brought to recover a part of it as money had and received by defendants for plaintiff's use.

A resolution of March 5th 1861, authorizes the directors to agree upon a case stated in this suit.

If the court be of opinion that the plaintiff is entitled to recover the said dividend without interest, then judgment to be entered for the plaintiff for the sum of $612, being the amount of the first dividend of $2.25 per share on two hundred and seventy-two shares of stock held by the plaintiff; but if the court is of opinion that said plaintiff is entitled to recover said dividend with interest, then judgment to be entered for said sum of $612, together with interest on the same from the 17th day of November, A. D. 1860, when payment of the said dividend, then due and payable, was demanded, up to the time when judgment shall be entered; but if the court should be of opinion that the plaintiff is entitled to recover neither principal nor interest, then judgment to be entered for the defendant; the costs to follow the judgment, either party reserving the right to sue out a writ of error therein.

The court below, on hearing, ordered that judgment be entered in favour of the plaintiff and against the defendant for $612, with interest from November 17th 1860, and costs. The case was thereupon removed into this court, when the entering of judgment as above stated was assigned for error.

*Penney & Sterrett*, for plaintiffs in error.

*George F. Gilmore* and *James J. Kuhn*, for defendants in error.

The opinion of the court was delivered, November 25th 1861, by

LOWRIE, C. J.—The judgment in this case stated, decides, that the holders of the unassessable stock are to be equal sharers with the other stockholders in the distribution of the capital stock of the company in winding it up; and we cannot say that this is erroneous. So far as the joint proprietors have expressed themselves in their articles of association and by-laws, it appears to us that this is their contract. In carrying on the business, the original proprietors and their assigns, were to have a preference *out of the profits* until the sums paid by them on assessments should be refunded; but as there were no profits, this preference availed them nothing. In one instance the expression is, that they shall be reimbursed "out of any surplus moneys on hand,"

[North American Mining Co. *v.* Clarke.]

but we cannot understand this as meaning anything but surplus beyond the capital stock, and therefore only profits.

True enough, the proprietors have made no express provision in their articles for winding up the concern, and therefore equity may define this process for them. But equality is equity, and we must adopt equality unless we have clear reason for doing otherwise, and we find none such. According to the express terms of the association, it seems to us that the new stockholders were to be at least equal sharers in the capital, and that they must have purchased on this supposition; and equity will not assume inequalities or preferences in such matters further than it finds them contracted for. The old stockholders have contracted for a preference out of the profit, but not out of the capital stock or basis of the operations of the company, and there is nothing revealed to us that satisfies that they ought to have it.

It is some evidence that we have interpreted their relations rightly, that at a stockholders' meeting this principle of distribution was adopted by a vote of nearly nine to one, though the stockholders favoured by it stand only as one to thirty. Yet we do not consider that vote as binding on the rights of any; for, however majorities may bind in the conduct of a concern, they can decide no one's rights in the act of settlement and distribution. Even when the by-laws or articles give the largest control to majorities, they mean this only as power in carrying on the business and not in its dissolution and distribution among the members. The resolution declaring how distribution shall be made is not binding because of any by-law giving authority to alter or amend the articles, but only because it is right, or in accordance with the relations existing among the stockholders.

Judgment affirmed.