### NILES v. LUDLOW VALVE MFG. CO.

(District Court, S. D. New York. April 22, 1912.)

CORPORATIONS (§ 156*)—STOCKHOLDERS—RIGHTS OF PREFERRED AND COMMON STOCKHOLDERS.

Preferred stockholders of a New Jersey corporation, where the certificate of incorporation provided, as permitted by the law of the state, that the preferred stock should "receive interest or dividends of 8 per cent. per annum and be preferred as to capital as well as to dividends," who have received such dividends for a number of years, have no interest in surplus earnings of the corporation which have been allowed to accumulate; but such earnings belong to the common stockholders, the corporation retaining sufficient property to pay the principal of its capital stock of both classes in full in case of dissolution.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. § 156.*]

At Law. Action by William W. Niles, as administrator, against the Ludlow Valve Manufacturing Company. On motions by both parties for directed verdict. Verdict directed for defendant.

Niles & Johnson, of New York City, for complainant.

Guggenheimer, Untermyer & Marshall (Abraham Benedict, of counsel), for defendant.

HOUGH, District Judge. This is not the court in which it is appropriate to write an elaborate essay on the rights of preferred shareholders, although the facts presented in this brief record afford the opportunity. Such an essay, if done well and with authority, is much needed. No more will be done here than to briefly indicate conclusions which are stated, while fully recognizing that much may be said on the other side.

The statutes of New Jersey, at the time of the organization of defendant and ever since, do not either fully or definitely state the rights

of preferred as against common shareholders, as the same may be urged under all the varying contingencies of business. In that state, as elsewhere, the rights, privileges, and duties of diverse classes of shareholders rest in contract. The contract must be made under the law, and in pursuance of law; but the law is wide enough to permit many lawful variants of contractual rights. See the cases cited and approved by Swayze, J., in Lloyd v. Pennsylvania Electric Vehicle Co., 75 N. J. Eq. 263, 72 Atl. 16, 21 L. R. A. (N. S.) 228, 138 Am. St. Rep. 557, 20 Ann. Cas. 119.

The defendant company has been in prosperous existence for a considerable number of years. Under the state law, as it stood at the time of incorporation, the holders of preferred stock were to be entitled to "a fixed yearly dividend," to be expressed in the certificate of incorporation. The certificate of this company stated that the preferred stock should "receive interest or dividends of 8 per cent. per annum and be preferred as to capital as well as to dividends." The stock certificates issued (one of which is held by plaintiff) only engages the defendant to pay "to the holders of this stock a yearly dividend of 8 per cent. per annum, payable half-yearly on the 1st days of January and July in each year."

The nature of the contract entered into between the corporation and its preferred shareholders is not otherwise shown in this record, except as the intent of the parties may be drawn from their actions. To me it is most important that for 20 years dividends have been declared of 8 per cent. upon the preferred stock, and almost always at a much higher rate upon the common stock. Let it be admitted that this fact works no estoppel against the plaintiff, and also that no inference of assent can be drawn against the plaintiff in respect of this method of declaring dividends, yet it remains true that, when a considerable number of persons raised no objection for many years to a method of interpreting a contract capable of being interpreted in another way, such silence is a fair argument that the practical construction given to the contract by those who originally entered into it is strong evidence that what was done was what they meant to have done.

The inference I draw from the language of the documents referred to and the history of this corporation is that when defendant was formed the preferred shareholders agreed that all earnings over and above an amount equivalent to 8 per cent. per annum on the preferred stock should belong to the common stockholders. This conclusion is strengthened by the use of the word "interest" in the charter. It is a very inappropriate word, and yet it is to me significant of the understanding of the preferred shareholders that they were investing as many hundreds of dollars as they procured shares of stock, out of which they were to get a return of 8 per cent. per annum, and no more.

The evidence is uncontradicted that in the course of years the defendant company earned some $500,000 more than it paid out for expenses and dividends; and to me the vital question here is: Who owned that $500,000 before distribution? Of course, all

the property of the company was liable for debts; but it is admitted here that, after providing for all debts and for payment in full of all outstanding stock, there was still cash or property on hand, earned in the operation of the defendant's corporate activities, amounting to $500,000.

If I am right in my interpretation of the shareholders' contract with the corporation of their own creation, the common shareholders were entitled to have those surplus earnings distributed to them in dividends, and I am wholly unable to see that it makes any difference whether such dividends took the form of cash or stock. It is, I think, true that underlying the question on the surface of this case is the inquiry: What would have been the rights of the preferred shareholders, had this company gone into involuntary dissolution with a large accumulation of earnings in its treasury, so that after paying every shareholder, whether common or preferred, 100 cents on the dollar, this surplus would still have remained. A condition something like the one supposed has arisen in the English courts, and I think the comment upon it by Swayze, J., in the case cited, supra, is instructive:

"The common stockholders insisted that the whole of this surplus was profits, and that, as they were entitled to all of the profits after paying the 5 per cent. to the preferred stockholders, they were entitled to the whole of the fund. The court, however, held that this position was untenable, and that the rule contended for by the common stockholders applied only to *annual profits*, and not to the large profits arising from the sale of the property of the corporation."

The fund out of which the stock dividend here in question was declared consisted of annual profits, although such profits had been kept on hand and permitted to accumulate for a number of years. If such profits, when and as earned, belonged to the common shareholders (after paying 8 per cent. to the preferred), they did not cease so to belong by failure to pay them all out in annual dividends.

In conclusion, it is my opinion that the preferred shareholders in this company have no right to dividends, except to the extent of 8 per cent. per annum; nor have they any rights in capital, except to the extent of 100 cents on the dollar of their stock, unless any addition to the original value of the corporate property is due, not to accumulated earnings, but to an unearned increment attaching to the corpus of defendant's estate.

For these reasons, a verdict is directed for defendant.