MOHAWK CARPET MILLS, INC., a corporation of the State of New York,

*vs.*

DELAWARE RAYON COMPANY, a dissolved corporation of the State of Delaware.

*New Castle, December 17, 1954.*

*William S. Potter* and *John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, and *Coleman Taylor,* Amsterdam, N. Y., for trustees in dissolution of Delaware Rayon Co.

*William H. Foulk* and *Robert W. Wakefield,* Wilmington, and *Nathan Kosseff,* New York City, for holders of 2195 shares of Class A stock objecting to plan of trustees for distribution of surplus on liquidation.

MARVEL, Vice Chancellor: In October 1954, Delaware Rayon Company was dissolved and trustees in dissolution were appointed to wind up the affairs of the company. The trustees filed a petition and report setting forth a liquidation plan, which was set down for hearing on objections and exceptions. Certain A stockholders have objected. The capital structure of Delaware Rayon Company originally consisted of authorized stock as follows: 4,500 shares of preferred stock of the par value of $100 per share, 150,000 shares of Class A stock of the par value of $15 per share and 150,000 shares of Class B stock of the par value of $15 per share.

The holders of the preferred stock under the terms of the corporate charter were entitled to a non-cumulative 7% preferred dividend, the balance of surplus and net profits after such dividends being payable to the Class A and Class B stock as hereinafter set forth. The corporate charter further provided that on liquidation the preferred stock was entitled to be paid its par value; thereafter

> "Any amount of the assets of the company remaining after the payment of the par value of the preferred stock shall be paid to and distributed among the holders of the Class A Stock and the holders of the Class B Stock, in the manner hereinafter provided."

The Class A stock was entitled to receive, after the payment of the preferred dividend, a dividend of 10%

> "* * * before any dividend shall be set apart or paid on the Class B Stock". After the payment of the 7% preferred dividend and the 10% dividend on the Class A stock "any further amount declared in dividends * * * shall be paid to the holders of the Class B stock, to the extent of 10% and should there be any further amount declared in dividends * * *, said further amount shall be divided pro rata among the holders of the Class A Stock and the holders of Class B Stock, in accordance with their holdings."

Following the last quoted language appears the liquidation clause:

> "In case of liquidation or dissolution of the company, after the payment of the full par value of the preferred stock, as here-

inbefore provided, the holders of the Class A Stock shall be entitled to receive cash to the amount of the par value of their Class A Stock before any payment in liquidation is made to the holders of the Class B Stock."

The charter also provides that the holders of the preferred and Class A Stock shall not be entitled

"* * * to any voice or vote in the management of the affairs of the corporation, nor shall they be entitled to notice of any meeting of the stockholders. The voting powers shall be confined to the holders of the Class B Stock."

At dissolution, the outstanding capital of the company consisted of 88,000 shares of Class A and 54,500 shares of Class B stock, all of the preferred stock having been redeemed and retired.

The provisions of the corporate charter make it clear that the Class A stock was intended to be a special or secondary preferred stock, entitled to a preferential fixed dividend before sharing pari passu in surplus and net earnings with the B stock after B stock had been paid its 10% dividend.

§ 151 *of Title 8, Delaware Code* pertaining to preferred and special stock provides in sub-paragraph (d),

"The holders of the preferred or special stock of any class * * * shall be entitled to such rights upon the dissolution of, or upon any distribution of the assets of, the corporation as shall be stated and expressed in the certificate of incorporation, or any amendment thereto * * *."

The trustees contend that the A stock after receiving its preferential payment of $15 per share on liquidation receives nothing additional if there are then remaining assets. The objecting A stockholders insist that in the absence of any provision to the contrary, the rights of stockholders are equal, *Penington v. Commonwealth Hotel Construction Corp.*, 17 *Del.Ch.* 394, 155 *A.* 514, 75 *A.L.R.* 1136, *Goldman v. Postal Telegraph, (D.C.Del.)* 52 *F.Supp.* 763, and that the remaining surplus assets must be distributed ratably between the

A and B stockholders after payment of $15 per share to the holders of each class of stock.

Admittedly, special or preferential rights must be specifically spelled out and the question for the court is to determine the meaning of the liquidation clause contained in the charter now under consideration and, if the meaning is unclear, to decide what inferences should be drawn from the language used.

The question thus squarely presented is whether or not Class A stock, admittedly having a preference on dissolution of $15 per share, is entitled to share *pari passu* with the Class B stock in the assets of the corporation remaining after the payment of such preference. As pointed out above, the Class A holders arguing for *pari passu* sharing concede that B stock must first be paid its par value.

Counsel have not cited a Delaware case or even a leading American case in point on the question of preferred or special stock sharing ratably with common in surplus on liquidation, although a priority in dividend payment is generally considered exhaustive,[1] *Niles v. Ludlow Valve Manufacturing Co.,* (2 *Cir.*) 202 *F.* 141; *Powers Foundry Co. v. Miller,* 166 *Md.* 590, 171 *A.* 842, and in this country corporate charters normally spell out clearly the rights of preferred stock on liquidation.

The English cases cited by the objecting stockholders (*In Re Espuela Land & Cattle Company* (1909) 2 *Ch.* 187, *In Re Fraser & Chalmers* (1919) 2 *Ch.* 114, and *Re John Dry Steam Tugs Ltd.* (1932) 1 ,*Ch.* 594) were decided on the principle that in disputes between preference stockholders and ordinary stockholders as to the right of the preference holders to share in surplus assets on liquidation, the burden of showing that the preference holders are not entitled to share ratably with common in surplus assets lies on the ordinary stockholders.

---

1. It is significant that the charter of Delaware Rayon Company does spell out clearly the right of Class A stock to share ratably with B stock in dividends after 10% is first set aside for the A stock and then for the B stock; compare, *Re Isle of Thanet Electric Co., Ltd., infra.*

The case of *Scottish Insurance Corporation, Ltd. v. Wilsons and Clyde Coal Co., Ltd.,* decided by the House of Lords in 1949 (1 *All E.R.* 1068) had the effect of overruling this principle and of transferring the burden to the preferred stockholders, requiring them to satisfy the court that a true construction of the corporate charter entitled them to share *pari passu* in surplus assets after receiving their preference on liquidation.

In November 1949, the English Court of Appeals in the case of *Re Isle of Thanet Electric Co., Ltd., 2 All E.R.* 1060, had before it on appeal the clear-cut question as to whether or not a preferred stock with a specific right to share in profits after payment of a fixed noncumulative dividend on the ordinary stock, had any rights in the surplus left on a winding up over and beyond a repayment of capital plus arrears in dividends.

Interpreting the holding of the House of Lords in the case of *Scottish Insurance Corporation, Ltd. v. Wilsons and Clyde Coal Company, Ltd., supra,* the Court of Appeals ruled that the language of Article 3 of the corporate charter was exhaustive.

Article 3 provided in part:

"The issued preference shares shall confer on the holders the right to a fixed cumulative preferential dividend at the rate of £6 per cent. per annum upon the amounts for the time being paid up or credited as paid up thereon respectively in priority to the ordinary shares, and the right to participate pari passu with the ordinary shares in the surplus profits which in respect of any year it shall be determined to distribute remaining after paying or providing for the said preferential dividend and a dividend for such year at the rate of six per cent. per annum on the amounts for the time being paid up or credited as paid up on the ordinary shares, and the preference shares shall confer the right in a winding-up of the company to repayment of capital, together with arrears (if any), and whether earned or not of the preferential dividend to the date of the commencement of the winding-up in priority to the ordinary shares."

This language is very similar to that in the Delaware Rayon Company charter. In both charters the terms as to dividend payments are clearly exhaustive. The English Court of Appeals, guided by the new doctrine of the House of Lords concerning rights of preference stock on dissolution laid down in the *Scottish Insurance Corporation, Ltd.* case, found that the preferred stockholders had not successfully carried the burden of showing that the provisions of Article 3, giving them only a return of capital plus arrears, was not exhaustive. The fact that dividend rights were clearly delineated so as to give the preference stock a ratable share in profits after the meeting of fixed dividend requirements, gave force to the conclusion of the English court that the preference stock was not intended to share ratably in surplus on winding up.

In the case at bar the provision giving the Class A holders cash to the amount of the par value of their stock before any payment in liquidation is made to the holders of Class B stock is clearly exhaustive. It can mean nothing other than that Class A stock shall have its $15 par preference on liquidation and nothing more. The remaining assets of Delaware Rayon Company, such as they are, must be distributed among the holders of Class B stock.

Order on notice.