LOUISE KOUNTZE SQUIRES ET AL., APPELLANTS, V. THE BALBACH COMPANY ET AL., APPELLEES.

129 N. W. 2d 462

Filed July 3, 1964. No. 35617.

Edgar M. Morsman, Morsman, Fike, Sawtell & Davis, and Renne Edmunds, for appellants.

Finlayson, McKie & Kuhns, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This action was brought in the district court for Douglas County, Nebraska, by Louise Kountze Squires and John C. Kirmse as plaintiffs on their own behalf and on behalf of all holders of preferred stock of The Balbach Company, against The Balbach Company, The Engler Company, and Paul E. Engler, defendants. Its object is to procure a declaratory judgment determining the amount per share they and the other preferred stockholders similarly situated should receive on winding up the affairs of the defendant, The Balbach Company, a corporation, on voluntary dissolution by action of the stockholders. The two named corporations are one and the same and will be referred to herein as the corporation or the defendant corporation.

At the conclusion of the trial, the district court held that the preferred stockholders were entitled to the par value of their stock with dividends at $8 per annum from January 1, 1962, to the date of payment less $2 per share which had already been paid, and that the common stockholders were entitled to the remainder. The costs were taxed to the plaintiffs except the costs of the First National Bank of Omaha as trustee which were directed to be paid by the defendant corporation.

From this judgment plaintiffs have appealed assigning as error that the judgment is contrary to the law and the evidence.

There is no objection made to the dissolution of the corporation. The controversy involved concerns only the proper distribution of the assets on liquidation between the holders of preferred and common stock. The facts herein have been stipulated by the parties subject to certain objections to certain portions thereof on the grounds of materiality and competency which pose no question of significance herein.

The Balbach Company was incorporated June 21, 1919. Its name subsequently was changed to The Engler Company but its corporate capacity remained unchanged.

The original articles of incorporation contained Article IV which, so far as it is of significance to our decision, reads as follows: "The amount of authorized capital stock of this corporation is the sum of Five Hundred Thousand Dollars ($500,000), divided into shares of the par value of One Hundred Dollars ($100) each, which shall be fully paid when issued, and non-assessable. * * * Two Thousand (2000) shares of said capital stock shall be common stock, and Three Thousand (3000) shares thereof shall be preferred stock. The preferred stock shall be preferred as to dividends and as to assets in case of liquidation, and shall be issued with such provisions as to payment of dividends thereon and the rate thereof and as to retirement, and with such other provisions as may be fixed and determined by resolution of the Board of Directors prior to its issuance."

No rate of dividend payable to holders of preferred stock is declared in this article and it is not stated to what extent such stock shall be preferred in the event of liquidation.

From the plaintiffs' petition and from the stipulation of facts, however, it is apparent that the rights of the present shareholders of the corporation are governed by an amendment to Article IV dated December 7, 1920, and the contents of the certificates of stock issued to preferred stockholders thereafter.

As amended at that time, Article IV, insofar as it relates to the present cause, follows: "The authorized capital stock shall be Five Hundred Thousand Dollars (500,000.00), divided into five thousand (5000) shares of the par value of One Hundred Dollars ($100.00) each, * * *. Two Thousand (2000) shares of said five thousand (5000) shares shall be common stock, and

three thousand (3000) of said five thousand (5000) shares shall be preferred stock. Holders of preferred stock shall be paid cumulative dividends of eight per cent (8%) per annum, payable quarterly, before any dividends shall be paid holders of common stock. After dividends of eight per cent (8%) have been paid holders of common stock, all further dividends shall apply equally to preferred and common stock. In case of liquidation, holders of preferred stock shall be paid the par value of their stock in full before any liquidation dividends are paid to the holders of common stock." ·

On the certificates of preferred stock the following appears: "The holders of the Preferred stock shall be entitled to equal voting rights with the holders of Common stock and shall be entitled to receive from the surplus or any profits of the Corporation when and as declared by the Board of Directors, dividends at the rate of eight per centum (8%) per annum * * *. The dividends on the Preferred stock shall be cumulative, and shall be paid before any dividends are paid on the Common stock, and after dividends of eight per centum (8%) per annum have been paid on the Common stock, the Preferred and Common stock shall participate equally in all further dividends.

"In the event of the winding up or dissolution of the Corporation, whether voluntary or involuntary, the holders of the Preferred stock shall receive the par value of their shares with any unpaid dividends thereon, before any payments are made to holders of the Common stock."

The quoted provisions from the amended article of incorporation and the recitations set out from the preferred stock certificates are quite clear with respect to dividends which might be declared before liquidation. Each share of preferred stock was entitled to receive an 8 percent dividend. If there was an excess each share of common stock was entitled to an 8 percent dividend and if it was proper to make further distribution they

were to be equally and proportionately divided between the preferred and common stock.

Distribution of dividends which accrued prior to January 1, 1962, to the preferred stockholders have been fully paid and $2 per share have been paid to them on those accruing thereafter. Although in view of our decision past dividend payments are not of importance, it may be said that from 1936 to 1952, with the exception of 1945, dividends were paid equally to the shareholders of each class of stock although the declared dividends were not always the same from year to year. In 1945 the dividend on the common stock was 4 percent and from 1953 to 1961, the dividends on the common stock varied from nothing to 4 percent. There was, however, an earned surplus balance in 1945 of $90,415.03 and thereafter the earned surplus balance increased rapidly each year until in September 1961, it had grown to $944,125.69. The distribution of this surplus balance on liquidation is the question now present for determination in this case.

In determining the question before us, there appears at the outset that there is a uniform rule applied in the liquidation of a corporation that the rights of participation in the distribution of the assets depend on the corporation's memorandum and articles of incorporation. See, In re National Telephone Co., (1914) 1 Ch. D. 755; Scottish Insurance Corp. v. Wilsons, (1949) 1 All E. L. R. 1068; Mohawk Carpet Mills v. Delaware Rayon Co., 35 Del. Ch. 51, 110 A. 2d 305; Continental Insurance Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871.

In the decisions the term "memorandum" is employed generally to describe the documentary records properly enacted by a corporation having controlling effect in the exercise of its corporate and fiscal functions. That is the sense in which it is employed in this opinion.

From the cases cited and those to be cited it appears that there are certain rules which have been generally

announced in certain jurisdictions relating to the distribution of assets on liquidation of a corporation.

One is that in the absence of specified rights or limitations all stockholders are entitled to share equally in liquidated surplus assets.

Another is that courts universally adhere to the rule that the rights of respective classes of stockholders are determined by the terms of the articles and memorandum of the corporation except as may be limited by statute.

Difficulty has ensued as in the present case concerning the precise application of the foregoing principles when the articles and memorandum are not explicit on its face.

The question of participation rights upon dissolution had been somewhat obscured by a conflict of authority on the related problem of the right of preferred shareholders to participate in additional dividend distribution beyond their stated priority before dissolution. In England, Will v. United Lankat Plantations Co., (1914) A. C. 11, and in the United States, Niles v. Ludlow Valve Mfg. Co., 202 F. 141, certiorari denied, 231 U. S. 748, 34 S. Ct. 320, 58 L. Ed. 465, further participation was denied in such a situation. However, in Englander v. Osborne, 261 Pa. 366, 104 A. 614, 6 A. L. R. 800, it was held that after the common stock had received a dividend equal to that received by the preferred stock, both were entitled to share equally in any excess. It would seem that the problems were so analogous that it would be inconsistent not to imply a limitation to further participation in dissolution from a stated preference to repayment if such is the proper rule as to annual dividends. The English courts until recently had treated the question as entirely distinct, on the grounds that one theory refers to rights in a going concern while the other refers to rights in liquidation. In re William Metcalfe & Sons, Ltd., (1933) 1 Ch. 142. This case was overruled and the distinction eliminated by the de-

cision of the House of Lords hereinafter discussed. The Metcalfe case is cited only to show the analogy existing in the situation with respect to both dividends and liquidating assets that has now been resolved in England by the application of the same rule to both situations by the House of Lords.

As to the dividends, the article and memorandum in the case before us are quite clear. It provided the preferred stockholders were to receive 8 percent annual dividends before any dividends were paid on common stock and that thereafter 8 percent per annum should be paid to the common stock, after which the two classes of stock were to participate equally in further dividends. In the present case, these dividends to the preferred shareholders have hitherto been paid in accordance with these provisions of the articles of incorporation and we need concern ourselves no further with them. Indeed in Continental Insurance Co. v. United States, *supra,* the court observed that the power to declare dividends which was not exercised could not be resorted to to increase the rights of the holders of the preferred stock on liquidation.

The defendant corporation maintains that the provisions in the amended Article IV providing that, "In case of liquidation, holders of preferred stock shall be paid the par value of their stock in full before any liquidation dividends are paid to holders of common stock," are in their nature an exclusive declaration of the rights of the preferred shareholders. This is in accordance with the decision of the Court of Chancery of New Castle County, Delaware, in Mohawk Carpet Mills v. Delaware Rayon Co., *supra,* decided in 1954. The liquidation clause in the Mohawk case provided: "In case of liquidation or dissolution of the company, after the payment of the full par value of the preferred stock, as hereinbefore provided, the holders of the Class A Stock (preferred) shall be entitled to receive cash to the amount of the par value of their Class A Stock (preferred) before any pay-

ment in liquidation is made to the holders of the Class B Stock (common)." The similarity of this liquidation clause to the one in the instant case will be noted. The court said: "In the case at bar the provision giving the Class A (preferred) holders cash to the amount of the par value of their stock before any payment in liquidation is made to the holders of Class B stock (common) is clearly exhaustive. It can mean nothing other than that Class A stock (preferred) shall have its $15 par preference on liquidation and nothing more. The remaining assets of Delaware Rayon Company, such as they are, must be distributed among the holders of Class B stock (common)."

In 1949 this same question in England came before the House of Lords in Scottish Insurance Corp. v. Wilsons, *supra*. There the colliery assets of the corporation involved had been nationalized under an act of Parliament, making it certain compensation. The result was that the company could no longer pursue the objects for which it was incorporated and its avowed intention was in due course to go into voluntary liquidation. The provisions of its articles in regard to winding up the company are more briefly set out in the dissenting opinion of Lord Morton, page 1087, as follows: "(Article) 159. In the event of the company being wound-up, the preference shares (first issue) shall rank before the other shares of the company on the property of the company, to the extent of repayment of the amounts called up and paid thereon. (Article) 160. In the event of the company being wound-up, the preference shares (second issue) shall rank before the ordinary shares but after the said preference shares (first issue) on the property of the company to the extent of repayment of the amount called up and paid thereon." The holding of the House of Lords is set out as follows on page 1069: "Held: (i) * * * on a true construction of the company's articles, subject to the payment to the preference stockholders of their capital and their preferential dividends,

if any not yet paid, and subject also to the discretionary applications by the directors under arts. 139 and 141 (a), the whole of the reserve funds and other assets of the company, including the proceeds of sale of the capital assets, were appropriated to the ordinary stockholders to the exclusion of the preference stockholders: Will v. United Lankat Plantation Co., Ltd. ([1914] A. C. 11; 109 L. T. 754), applied; and, therefore, as the preference stockholders had no right to anything beyond what they would receive under the proposed reduction of capital, and as the articles gave them clear notice that there was no assured permanence of their right to a cumulative 7 per cent. dividend, their complaint that payment off in the present circumstances was unfair and inequitable was groundless. * * *

"(ii) * * * arts. 159 and 160 contained a complete statement of the rights of the preference stockholders in the winding-up for the reason that the whole of the profits and assets of the company (subject to payment of the amounts called up and paid on the preference stock) had been appropriated before liquidation to the ordinary stockholders, and there was nothing in the articles to indicate that the rights of the preference stockholders, if they had not already been paid off, would be increased by attributing to them part of the profits and assets which had been appropriated to the ordinary stockholders: Re Bridgewater Navigation Co. ([1891] 2 Ch. 317; 65 L. T. 576), approved; Re William Metcalfe & Sons, Ltd. ([1933] Ch. 142, 148 L. T. 82), overruled. Therefore, as the preference stockholders would not be entitled on a winding-up to anything more than a return of their paid-up capital, apart from any considerations arising out of the Coal Industry Nationalization Act, 1946, § 25, their objections to the proposed reduction had no substance."

Thereafter the Court of Appeals in England in Isle of Thanet Electric Supply Co., (1949) 2 All E. L. R. 1060, in considering a similar case involving voluntary liqui-

dation, followed this opinion to the same conclusion. The opinion sets out the applicable portions of the articles of incorporation and the reasons for the decision as follows: "With these considerations in mind, I turn back to art. 3 of the articles of association in this case. As regards the rights as to profits, the whole of the distributable profits are expressly dealt with. They are to be applied, first, in paying to the holders of the preference stock 'a fixed cumulative preferential dividend at the rate of six per cent. per annum on the amounts for the time being paid up or credited as paid up thereon respectively in priority to the ordinary shares'; secondly, in paying a noncumulative dividend at the rate of six per cent. per annum, calculated on the same basis, to the holders of the ordinary shares; and the balance is then distributable between the two classes of shares pari passu. Nothing could be more plainly exhaustive than that language. Then, as regards the rights in a winding-up, the holders of the preference shares are stated to be entitled to certain payments in priority to the ordinary shares. Those payments are, first, repayment of the capital paid up on the preference stock, and, second, any arrears of dividend, whether earned or not. The question then is whether there is anything to suggest that the language regarding the rights of the holders of the preference stock in a winding-up is not exhaustive. I can find nothing. The onus now, as I have said, is, in my view, on the holders of the preference stock to show that the provision is not exhaustive, and, in my judgment, they have failed to discharge that onus."

In 12 Fletcher, Cyclopedia Corporations (Perm. Ed.), § 5449.1, p. 278, the question before us was discussed as follows: "The English cases formerly held that the preferred shares had participation rights beyond their liquidation preference even though a contrary rule obtained with respect to participation beyond the dividend preference. However, recent English cases have

removed such apparent inconsistency by holding that the liquidation preference is exhaustive." In the same section the text further discussed the case of Mohawk Carpet Mills v. Delaware Rayon Co., *supra*, cited in the notes, saying: "In the first American case to cover this point the charter provided that in the case of liquidation or dissolution of the company, after the payment of the par value of the preferred stock, the holders of the Class A stock (preferred) should be entitled to receive cash to the amount of the par value of their Class A stock (preferred) before any payment in liquidation was made to the holders of Class B stock (common). The court held that the provision giving Class A holders (preferred) cash to the amount of the par value of their stock before any payment in liquidation was made to the holders of Class B stock (common) was clearly exhaustive. It can mean nothing more than that the Class A stock (preferred) should have its $15.00 par preference on liquidation and nothing more. In other words all assets remaining after the holders of Class A stock (preferred) had received the par value were to be distributed to the Class B stockholders (common)."

The law review reports, 53 Michigan Law Review 887, and 30 Notre Dame Lawyer 679, both review the cited case of Mohawk Carpet Mills v. Delaware Rayon Co., *supra*, and both state it is the first American case to interpret such limitations in articles of incorporation with regard to the rights of the two classes of stock on liquidation.

The plaintiffs point out that the decision in Mohawk Carpet Mills v. Delaware Rayon Co., *supra*, is not by the court of last resort in Delaware. They cite cases, some of which will now be discussed, which they contend should support a rule that the assets of the defendant corporation in the case before us should be divided between the two classes of stockholders.

Continental Insurance Co. v. United States, *supra*, was a case in which the Supreme Court of the United

States was reviewing the reorganization and enforced readjustment of the corporate structures of the Reading Company and subsidiary, affiliated, and related companies which by a previous decree of that court had been held to be operating as an unlawful combination in restraint of trade under the Sherman Anti-Trust Act. In the process it was necessary to determine the rights of stockholders in the "old" Reading Company on its liquidation. It held that the assets should be divided between both preferred and common shareholders. That the decision was based on memorandum of the company clear and unambiguous is made apparent by the opinion of the court. "The record discloses that in 1904, when the Reading Company made its application to the New York Stock Exchange to have its stock listed, it contained the following statement:

" 'The Preferred and Common stocks have equal voting power and in liquidation or dissolution of the corporation will share equally in pro rata distribution of assets.'

"Coming as this must have come from the representatives of both the preferred and common stockholders, it is significant evidence of what they then thought of their respective rights and has the additional weight of a representation to future purchasers of the two classes of stock as to the kind of interests they were buying in the company.

"Our conclusion that the claim on behalf of the common stockholders is invalid is based on the construction of the words of the agreement itself and hardly needs authority to sustain it. It is, however, in accord with the general common-law rule that stockholders common and preferred share alike in the assets of a liquidating corporation, if the preference is only as to dividends. (Citing cases.) This is the rule in Pennsylvania. North American Mining Co. v. Clarke, 40 Pa. St. 432. The cases in which a different conclusion has been reached are where the contract or law determining the rights of the preferred stockholders has an express

or clearly implied restriction as to the share which they may take in the assets on liquidation. Niles v. Ludlow Valve Mfg. Co., 196 Fed. 994; Russell v. American Gas Co., 152 App. Div. 136." It is obvious that the decision was based on an agreement which could not have been otherwise interpreted. Neither can inferences be drawn from the other statements in the court's opinion which set out different rules that are patently no basis for the decision of the court. The cited case has no application.

The Equitable Life Assurance Society v. Union P. R. R. Co., 212 N. Y. 360, 106 N. E. 92, L. R. A. 1915D 1052, did not involve liquidation of the railroad corporation. It was a case in which the railroad had received some $80,000,000 from two sources. One was the retirement of its bonds in exchange for stock in which the stock given in exchange was received by the bondholders at $75 a share above par and hence involved a gain in that amount. The second was a profit on the sale of stock in other corporations held by the company. The preferred stockholders contended this gain was not profits from the ordinary business of the railroad and should be treated as capital assets. The court held it was ordinary profits and the preferred stockholders being limited to receive dividends not exceeding 4 percent, it might be distributed to the common stockholders without prejudice to the rights of preferred stockholders. It has no application here.

The case of Sternbergh v. Brock, 225 Pa. 279, 74 A. 166, 133 Am. S. R. 877, 24 L. R. A. N. S. 1078, is cited by the plaintiffs. It did not involve liquidation but only annual dividends. By a resolution at a stockholders meeting it was provided that the preferred stock should receive an annual dividend of 5 percent each year before any dividends were to be set apart on the common stock. For several years the preferred stockholders had received only the designated 5 percent. In March 1907, the directors voted an 8 percent dividend on both common and preferred stock. A holder of

common stock sought to enjoin the payment of more than 5 percent to the preferred stockholders. The court held that the preferred stockholders should receive the dividends voted by the directors. The case turned to a great extent on the statute of the State of Pennsylvania authorizing the issuance of this preferred stock which further stated: "* * * the holders of which preferred stock shall be entitled to receive such dividends thereon as the board of directors of the corporation may prescribe, payable only out of the net earnings of the corporation." The cited case has no application here.

Other cases cited, including Niles v. Ludlow Valve Mfg. Co., *supra;* Guaranty Trust Co. of New York v. Galveston City R. Co., 107 F. 311; and Russell v. American Gas & Electric Co., 152 App. Div. 136, 136 N. Y. S. 602, have been examined and it appears in each instance that their decisions throw no light upon the case before us.

On review of the authorities cited, the case of Mohawk Carpet Mills v. Delaware Rayon Co., *supra,* is the only case in the United States we have found, or to which we have been referred, that is decisive of the issue presented. It is in accord with the present decisions of the courts of England and the reasoning of these authorities appears sound.

We conclude that provisions in corporate articles and memoranda that holders of preferred stock shall be paid the par value of their stock before any liquidation dividends are paid to the holders of common stock is exhaustive and means that the preferred stock shall have its par preference on liquidation and nothing more.

It follows that the judgment of the trial court was without error and should be and is affirmed.

AFFIRMED.

YEAGER, J., dissenting.

I do not find myself in accord with the majority opinion and the decision, in consequence of which I respectfully dissent. I do not think that my views, which I

think should control in the disposition of the case, could be properly comprehended without an analysis in detail of the questions involved, therefore a full presentation will be made herein in the same manner as would be done if this were a majority opinion.

This is a declaratory judgment action instituted pursuant to statute by Louise Kountze Squires, John C. Kirmse, and all shareholders of the preferred stock of The Balbach Company, similarly situated, plaintiffs, against The Balbach Company, The Engler Company, and Paul E. Engler, defendants, wherein the plaintiffs seek judgment declaring the amount per share that they as preferred stockholders should receive on dissolution of the defendant, The Balbach Company, a corporation, and to enjoin the defendants, on dissolution of the corporation, from the distribution of assets except in accordance with what shall be adjudged to be the rights of the named plaintiffs and the unnamed preferred stockholders.

The case was tried to the court and at the conclusion of the trial a judgment was rendered in which the rights of the preferred stockholders on voluntary dissolution, liquidation, and the winding up of the affairs of the corporation were declared. It was adjudged therein that the preferred stockholders were entitled to receive the par value of their stock, together with dividends thereon at the rate of $8 per annum computed from January 1, 1962, to the date of payment, less $2 per share already received, with costs taxed to the plaintiffs, except that any costs or expenses of the First National Bank of Omaha as trustee should be paid by the defendant corporation.

From this judgment the plaintiffs have appealed. As ground for reversal of the judgment they assert that it is contrary to the evidence and to the law.

It is pointed out here that the record does not disclose any opposition to liquidation or dissolution of the defendant corporation. The only basic question in-

volved is as to the proper allocation and distribution of the assets and the respective rights of the stockholders on liquidation among the holders of preferred and of common stock. There is little if any dispute as to controlling facts. The facts were stipulated and included in a bill of exceptions with reservations only as to competency and materiality of some stipulated facts.

Background which is important in the determination of the questions involved is in substance as follows. The Balbach Company was incorporated June 21, 1919. Later the name was changed to The Engler Company but the corporate capacity remained the same. This is of no significance here. The parties have treated the two as one and have referred to them as the corporation.

Article IV of the original articles of incorporation, to the extent necessary to state here, was as follows: "The amount of authorized capital stock of this corporation is the sum of Five Hundred Thousand Dollars ($500,000), divided into shares of the par value of One Hundred Dollars ($100) each, which shall be fully paid when issued, and nonassessable. * * * Two Thousand (2000) shares of said capital stock shall be common stock, and Three Thousand (3000) shares thereof shall be preferred stock. The preferred stock shall be preferred as to dividends and as to assets in case of liquidation, and shall be issued with such provisions as to payment of dividends thereon and the rate thereof and as to retirement, and with such other provisions as may be fixed and determined by resolution of the Board of Directors prior to its issuance."

It is pointed out here that no rate of dividend is declared in this article as to dividends to be paid to holders of preferred stock in the event of liquidation and nothing is therein contained as to distribution of assets. This however is of no consequence since in the stipulated facts the parties have stated that this subject is controlled by an amendment to Article IV dated December 7, 1920, and the contents of the certificates of stock issued to

preferred stockholders after the effective date of the amendment.

Article IV, after amendment, to the extent necessary to state it here, is as follows: "The authorized capital stock shall be Five Hundred Thousand Dollars ($500,-000.00), divided into five thousand (5000) shares of the par value of One Hundred Dollars ($100.00) each, * * *. Two Thousand (2000) shares of said five thousand (5000) shares shall be common stock, and three thousand (3000) of said five thousand (5000) shares shall be preferred stock. Holders of preferred stock shall be paid cumulative dividends of eight per cent (8%) per annum, payable quarterly, before any dividends shall be paid holders of common stock. After dividends of eight per cent (8%) have been paid to holders of common stock, all further dividends shall apply equally to preferred and common stock. In case of liquidation, holders of preferred stock shall be paid the par value of their stock in full before any liquidation dividends are paid to the holders of common stock."

On the certificates of preferred stock involved the following appears: "The holders of the Preferred stock shall be entitled to equal voting rights with the holders of Common stock and shall be entitled to receive from the surplus or any profits of the Corporation when and as declared by the Board of Directors, dividends at the rate of eight per centum (8%) per annum * * *. The dividends on Preferred stock shall be cumulative, and shall be paid before any dividends are paid on the Common stock, and after dividends of eight per centum (8%) per annum have been paid on the Common stock, the Preferred and Common stock shall participate equally in all further dividends.

"In the event of the winding up or dissolution of the Corporation, whether voluntary or involuntary, the holders of the Preferred stock shall receive the par value of their shares with any unpaid dividends thereon,

before any payments are made to holders of the Common stock."

By interpretation of these quotations from the articles of incorporation and the memorandum statement appearing on the stock certificates, certain information becomes apparent and conclusive. Each share of preferred stock was entitled to a preferred dividend of 8 per cent. Thereafter, if sufficient funds were available, each share of common stock was entitled to an 8 per cent dividend. If there was an excess over these two, then it was proper to make distribution of additional dividends equally and proportionately to the shares of preferred and common stock. The stock of preferred holders is described as preferred stock, but in truth it is, by the terms of these instruments, preferred and participating. After its right of preference and a subordinate preference to common stock is satisfied, it stands as to dividends on an equal footing with the common stock. The distributions to be made on liquidation are denominated dividends. There is no affirmative declaration of the right of the holders of common stock superior to the rights of preferred stockholders as to dividends on liquidation, or on distribution of assets, or surplus assets other than dividends, and there is no declaration negativing the right of preferred stockholders to participate in surpluses to be distributed as dividends or otherwise.

What happened with reference to operation and appropriation of dividends prior to 1936 is not disclosed. However from 1936 to 1952, except the year 1945, dividends were paid equally on each of the shares of preferred and of common stock. They were equal for the two classes but were not always the same from year to year. For the year 1945 a dividend of 4 per cent was paid on the common. For the years from 1953 to and including a part of 1961, the rate changed from nothing to 4 per cent, this although there was a retained earnings balance of $90,415.03 in 1945, which had been

increased to $495,069.62 in 1953, with an increase which, amounted to a total of $944,125.69 in 1961.

It is this balance which the defendants herein insist should on liquidation be distributed to the holders of the common stock. On the other hand the plaintiffs insist that the distribution should be made to the holders of the preferred and of the common stock in accordance with their interpretation of the declared rights of the parties on liquidation.

In an approach to a determination of this question it is pointed out that what appears to be a uniform rule to be applied in the liquidation of corporations is that, except in the case of ambiguity, the rights of participation depend on the corporation's memorandum and the articles of incorporation. See, In re Espuela Land & Cattle Co., (1909) 2 Ch. D. 187; In re National Telephone Co., (1914) 1 Ch. D. 755; Continental Insurance Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871; Sternbergh v. Brock, 225 Pa. 279, 74 A. 166, 133 Am. S. R. 877, 24 L. R. A. N. S. 1078; Mohawk Carpet Mills v. Delaware Rayon Co., 35 Del. Ch. 51, 110 A. 2d 305; Scottish Insurance Corp. v. Wilsons, (1949) 1 All E. L. R. 1068.

In the decisions the term "memorandum" is employed generally to describe the documentary records properly enacted by a corporation having controlling effect in the exercise of its corporate and fiscal functions. That is the sense in which it is employed in this opinion.

From the cases cited it appears that there are at least four rules which have been generally announced in certain jurisdictions relating to the distribution of assets on liquidation of corporations. One of these of course is that the articles of incorporation and memorandum are controlling as to both dividends and assets in the absence of ambiguity.

Another is that where the distribution is of dividends the declaration as to distribution of dividends between or among preferred and common stockholders, so long

as the distribution is of dividends, is controlled by the memorandum and articles.

The third is that if on liquidation there are assets as distinguished from dividends to be distributed, in the absence of direction, the distribution shall be share and share alike to preferred and common stock based upon number and par value of the stock.

The fourth is that in case there is no special provision beyond a statement of what the preferred stockholders shall be paid before ultimate distribution of the assets remaining thereafter means that all that remains shall be paid share and share alike to the holders of the common stock. This fourth appears to embody the theory on which the defendants rely in the presentation of their case. This theory, they contend is sustained by Mohawk Carpet Mills v. Delaware Rayon Co., *supra,* a case decided by the Court of Chancery in and for New Castle County, Delaware. No other case has been cited directly supporting or bearing on this subject.

The defendants, pursuing this fourth theory, substantially say that there was no specific statement in the memorandum or articles of incorporation declaring entitlement to be in the Class A stockholders, who were in a situation like the preferred stockholders in the case at bar, hence they were not entitled on liquidation to participate in that which had accumulated before liquidation and which could have theretofore been distributed share and share alike among the holders of the shares of the two classes of stock. In other words, they say that since there was specific provision for dividends over and above regular dividends payable to the holders of shares of Class A or preferred, and there being no provision for distribution of assets on liquidation, the Class B or common stock was entitled to all of this remainder. This contention amounts to an assertion that this failure to mention the Class A stockholders in this connection is an effective prohibition of their participation. Thus that case being in fact like the one here on

the basis of the reasoning there, common stockholders here are entitled to all and the plaintiffs nothing on liquidation. That was a case having three classes of capital stock, with two only involved, but the rule applying there would be applicable here.

The effect of this, if applied here, would require it to be said here that on liquidation of a corporation having common stock and preferred participating stock and there is nothing specifically declaratory of the rights of common or the preferred and participating stockholders, either in the memorandum or articles, the accumulated assets would become divisible only among the holders of common stock.

The only case to which attention has been called which supports this view is Mohawk Carpet Mills v. Delaware Rayon Co., *supra*.

The general rule on liquidation of assets which finds support in the cases to which attention has been called is as pointed out in The Equitable Life Assurance Society v. Union P. R. R. Co., 212 N. Y. 360, 106 N. E. 92, L. R. A. 1915D 1052, that if there are accretions which have become part of the dividends they are required to be distributed among the stockholders, common and preferred share and share alike. This attitude conforms to the attitude of the United States Supreme Court contained in the opinion in Continental Insurance Co. v. United States, *supra*.

From this examination it appears that this rule is and should be controlling in the disposition of the subject presented by the record here, unless the memorandum and articles of incorporation required that it be done in a specific manner, that is, as applied to this case the liquidation distribution should be carried out on the same basis as would be employed in the distribution of dividends of a going concern. As pointed out liquidation was not required in a specific manner.

The rule which the defendants seek to have applied and which was apparently applied in Mohawk Carpet

Mills v. Delaware Rayon Co., *supra,* cannot be re-garded as having controlling significance here. The circumstances, reason, and other cited authority will not so permit.

The circumstances and acts involved are closely par-alleled by those in Continental Insurance Co. v. United States, *supra,* in which the United States Supreme Court in its opinion considered the questions presented and equitably declared the rights of parties in a situation such as this and adjudicated accordingly.

In the opinion in that case it was said: "The failure of the board to exercise it, (to exercise certain powers not necessary to mention here) and the application of the earnings to surplus determine such earnings to be assets as of the time of the compulsory winding up and liquidation of the corporation. The power to declare dividends not exercised can have no more effect upon the rights of the preferred stockholders to share in the ex-isting assets of the corporation when liquidated than the failure of the company to convert preferred stock into common, or to redeem the preferred stock at par. The proper interpretation of the agreement is that, after the declaration of dividends for any current year, the un-divided earnings are to be regarded as capital assets and to be distributed on liquidation, unless the board of directors has meantime applied them as dividends. If the argument of appellants were carried to its logical result, all the net earnings of the Reading Company in twenty-five years no matter how invested or applied to increasing the earning capital, must in a liquidation be treated as undistributed profits to go entirely to the common stock without any action of the board of di-rectors. This is impossible."

In the opinion the general rule of the other cases cited as to the distribution on liquidation is reiterated, that is, that everything thereafter must be regarded as capi-tal assets and on liquidation distributed as such. Thus, by the failure of the board of directors to declare divi-

dends before liquidation, as would have been proper, they allowed profits to become a part of the assets and remain so up to the time of liquidation. This deprived the holders of either preferred stock with participation rights or common stockholders from claiming the right to dividends as such and left to them only the right to participation in capital assets. In that connection it was said in declaring the claim of the common stockholders invalid who were contending as are the defendants in this case: "Our conclusion that the claim on behalf of the common stockholders is invalid is based on the construction of the words of the agreement itself and hardly needs authority to sustain it. It is, however, in accord with the general common-law rule that stockholders common and preferred share alike in the assets of a liquidating corporation, if the preference is only as to dividends."

Attention has not been directed to any authority which is in conflict with the pronouncements of the United States Supreme Court in the case cited except Mohawk Carpet Mills v. Delaware Rayon Co., *supra*, which fails to respond to the principles regarded as conclusive in Continental Insurance Co. v. United States, *supra*, and to no reasoning in the rules in the other cases cited. Also there is no memorandum or articles to the contrary.

In Continental Insurance Co. v. United States, *supra*, the court observed that the power to declare dividends, which was not exercised, could not be resorted to to increase the rights of the holders of the preferred stock on liquidation. Equitably it appears that a proper corollary to that declaration would be that likewise the rights of the common stockholders cannot properly be impaired by a resort to failure to properly declare dividends before liquidation.

It appears that reasonably and equitably the conclusions which flow from Continental Insurance Co. v.

United States, *supra*, should be allowed to control in all of the interpretative aspects of this case.

The effect of this is to say and to adjudge that on liquidation the plaintiffs were and are entitled to receive the equal of the par value of their stock; that the holders of common stock were and are entitled to receive the par value of their stock; that after this the preferred stockholders were and are entitled to receive their preferred dividend; that after this the holders of common stock were and are entitled to receive a dividend equal to that payable to the holders of preferred stock; and that after this the preferred and the common stockholders were and are entitled to share equally in the balance of the assets on the basis of the number of shares held, less an amount sufficient to compensate the common stockholders for the difference between what they had received on previously declared dividends and the previously declared dividends paid to the holders of preferred stock.

The judgment of the district court should be reversed and the cause remanded with directions to proceed with liquidation in accordance with what it is urged should be the proper judgment in this case.

SPENCER, J., concurring in this dissent.