CLARK WILLIAMS and Others, Appellants, *v.* ALFRED H. RENSHAW and Others, Respondents.

Third Department, March 9, 1927.

Corporations — stock — rights of preferred stockholders on dissolution — certificate provided that upon dissolution preferred stock should be paid " in full at par before any amount shall be paid on account of the common stock "— on dissolution preferred stockholders are entitled to receive only amount equal to par value of shares — all remaining assets must be divided among common stockholders.

Preferred stockholders of a corporation are, upon dissolution, entitled to receive only the par value of their shares, and cannot, after the common stock has been paid at par, share in any surplus remaining, where the certificate of incorporation gives the preferred stockholders the right to non-cumulative dividends up to eight per cent on the par value of the preferred stock, and provides that after the same amount has been paid on the common stock, the directors may declare, from the surplus then remaining, a dividend on both common and preferred stock, and where the certificate further provides that, upon dissolution, the preferred stock shall be " paid in full at par before any amount shall be paid on account of the common stock."

DAVIS, J., dissents, with opinion.

APPEAL by the plaintiffs, Clark Williams and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Albany on the 9th day of September, 1926, upon the decision of the court rendered after a trial at the Albany Trial Term before the court without a jury.

*Masten & Nichols* [*John A. Kelly* of counsel], for the appellants.

*Wilber, Norman & Kahn* [*Mark W. Norman* of counsel], for the respondents.

McCANN, J.    This action was brought to restrain the respondent, Federal Signal Company, its officers, agents, servants and employees, and the individual respondents, their agents, servants and employees, from making any distribution of the assets of the Federal Signal Company in accordance with any plan by which the appellants, owners of second preferred stock, were deprived of or prevented from receiving the share which they would receive by reason of such ownership on a basis of second preferred stock, receiving on a distribution of the assets of the corporation par value for the shares of the said second preferred stock, the common stock receiving par value, and then the second preferred stock and the common stock sharing equally in the remainder of the assets distributed; and to restrain the carrying out of any plan of the distribution of the assets, by which the appellants were to receive only par value for their second preferred stock.

The case was tried at Trial Term without a jury. The court decided that the second preferred stock of the Federal Signal Company when it receives on a distribution of the assets its par value, is paid in full and not entitled to any further payment; and that after receiving such payment, the common stock is entitled to receive the remaining assets on distribution, and that the defendants were entitled to judgment dismissing the complaint. From the judgment entered on such decision this appeal has been taken.

The individual respondents comprised the board of directors of the Federal Signal Company which was organized on the 1st day of February, 1908, under the provisions of the Business Corporations Law of the State of New York. The certificate of incorporation provided that the capital stock should be $2,000,000, of which $600,000 should be preferred stock, consisting of 6,000 shares of the par value of $100 each, and $1,400,000 of common stock consisting of 14,000 shares of the par value of $100 each. Provision was also made that the preferred stock should be entitled in preference and priority over the common stock as follows:

" The preferred stock shall receive in each year out of the earnings of the corporation declared as dividends by the Board of Directors non-cumulative dividends up to eight percentum of the outstanding preferred stock before any dividends are paid in such year upon the common stock, and in addition, after the common stock shall have received in any year out of the earnings of the corporation

declared as dividends by the Board of Directors eight percentum of the outstanding common stock, the remainder of the earnings declared as dividends shall be participated in by both preferred and common stock in the same proportion. Upon the dissolution of the corporation and distribution of its assets the preferred stock shall be paid in full at par before any amount shall be paid on account of the common stock."

Subsequent to the filing of the certificate of incorporation the capital stock was increased to $2,300,000 and the stock reclassified so that there would be first preferred stock in the amount of $300,000, divided into 3,000 shares of the par value of $100; $600,000 of the second preferred stock divided into 6,000 shares of par value of $100; and $1,400,000 of common stock divided into 14,000 shares at the par value of $100 each. The original preferred stock by this reclassification became the second preferred stock; the priorities and preference of the first preferred stock were set forth in the certificates of reclassification and, subject to such preferences the second preferred stock (that is, the original preferred stock) retained its then present preferences over the common stock. A subsequent reclassification was made in reference to the first preferred stock but it was again provided that subject only to the preference of the first preferred stock the second preferred stock (that is, the original preferred stock) should retain its preference and priority over the common stock.

The certificates of the second preferred stock contained the following statement:

" The holders of preferred stock are entitled to non-cumulative dividends at the rate of eight per cent per annum in preference and priority to any payment of any dividend on the common stock, and after the payment of dividends upon the common stock at the rate of eight per cent per annum, to participate in additional dividends in the same proportions as the holders of common stock. In case of dissolution the holders of the preferred stock are entitled to be paid in full before any payment is made on account of the common stock."

On October 24, 1923, the stockholders of the Federal Signal Company voted to sell all its assets and effects including its good will and its name, in so far as the latter might be the subject of a sale, to the General Railway Signal Company. A formal conveyance was made on May 23, 1924, and the Federal Signal Company received the agreed consideration. At the time of said conveyance the latter company had outstanding first preferred stock at $100 par amounting to $273,125; second preferred stock at $100 par amounting to $600,000; and common stock at $100 par amounting to

$1,365,500. On September 17, 1925, the stockholders of the Federal Signal Company elected to dissolve, the stock of the appellants having been voted against the dissolution. Such company is now in the process of dissolution.

Subsequent to May 23, 1924, the date of the transfer of the property by the Federal Signal Company, the first preferred stock was retired by the payment of $105 on the par value of such stock together with cumulative dividends totaling thirty-two per cent. Prior to August 15, 1925, the board of directors directed that the second preferred stock be retired by the payment thereof at par; such retirement was to be effective on August 15, 1925. There is no provision in the certificate of incorporation or any certificate amending the certificate of incorporation or in the stock certificates of the second preferred stock which provides for the retirement of such stock.

The board of directors of the defendant corporation adopted a plan of distribution of the assets and requested the common stockholders of the defendant corporation to accept certain assets received from the General Railway Signal Company in payment of their stock. Such plan of distribution provided only for the payment of second preferred stockholders at par and after providing for payment of liabilities, provided also for distributing the remaining assets to the common stockholders. The holders of the second preferred stock refused to accept this proposition. The value of the assets which the defendants planned to distribute to the common stockholders after having provided for payment of liabilities and for par value for the second preferred stock exceeds the amount of the par value of the common stock of the defendant corporation. It is the contention of the plaintiffs that upon a dissolution of the corporation they are entitled as holders of the second preferred stock to first be paid the par value of said stock, then that the common stock should be paid par value, and that any balance remaining should be shared equally by the second preferred and the common stock.

Although there was a claim made prior to the adoption of this plan of distribution that the second preferred stock should share in the " surplus earnings " after being paid at par, that question is not now before us; it is not claimed that the surplus earnings should be declared as dividends. There was no demand that additional dividends be declared from surplus earnings nor was there any request made to determine how much, if any, surplus earnings were available to be declared as dividends to be applied on the second preferred stock. On this appeal, therefore, surplus earnings, if any, are treated as undivided assets.

The rule is well settled that the rights of various classes of stock-holders as between each other are purely contractual and that the contract controlling the same is the certificate of incorporation, and furthermore, that unless there is some limitation in the certificate which deprives him of his right to participate with the common stock on a dissolution, the rights of a preferred stockholder are equal to those of the common stockholder. *(Lockwood v. General Abrasive Co.,* 210 App. Div. 141; affd., 240 N. Y. 592. See, also, *Roberts v. Roberts-Wicks Co.,* 184 N. Y. 257; *Continental Ins. Co. v. United States,* 259 U. S. 156.)

" Preferred stockholders may not be entitled to share at all in the surplus assets or may be entitled to share only to a certain extent. The question is simply one of contract." (14 C. J. p. 422, § 580.)

The question here is not one of failure to define rights nor of limitation of extension of rights; it is a question of interpreting the language of the certificate of incorporation which states that " upon dissolution of the corporation and distribution of its assets the preferred stock shall be paid in full at par before any amount shall be paid on account of the common stock." The solution of the problem before us depends upon the meaning of the words " paid in full," " at par."

The words above quoted are not ambiguous. The meaning to be ascribed to such language is that the second preferred stockholders should be paid " in full " and that " *payment in full* " means that they should receive payment " at par " and that payment made to them when made " at *par* " " shall be in *full.*" This conclusion eliminates the necessity of a discussion of the English authorities cited by the appellants, to wit: *Matter of Espuela Land & Cattle Co.* (L. R. [1909] 2 Ch. 187) and *Matter of Fraser & Chalmers, Ltd.* (L. R. [1919] 2 Ch. 114).

The first case above cited involved the question of the distribution of dividends. There was a question as to whether the preference stated operated as a limitation upon further distribution. The opinion says: " There is not any rule of law that shareholders having a fixed preferential dividend *take that only.*" Under the language in that case the court held that the limitation was not exclusive but the court also declared the rule that it was a question of construction of " the documents embodying the constitution of the company." The first case above cited has not been universally followed in the English courts; in fact, later cases repudiate such holding. In the case of *Matter of National Telephone Co.* (L. R. [1914] 1 Ch. 755) the court says: " In my judgment the fact that an express right was given in respect of dividend, to

receive more than the amount of the preferential dividends in certain events strengthens the inference that the *silence* as regards return of capital in a winding-up indicates that there was to be no return of capital beyond the return of the nominal amount of the capital of the shares." The language in the instant case provides for the " winding up " and specifies the amount to be received. This is exclusive of other amounts. ( *Niles* v. *Ludlow Valve Mfg. Co.*, 202 Fed. 141, 143.) If weight is to be given to the words " paid in full " it must be in connection with the words " at par." In this case " in full " and " par " can have but one meaning when used together. When the second preferred stock is paid at " par " it no longer exists. It is automatically eliminated. There is nothing that remains upon which a distribution of assets can be made.

The conclusion reached accords with the understanding of all parties as shown by their conduct: (1) A large majority of the stock was voted for the proposed distribution of the assets as above indicated; (2) a very large majority have accepted payment for their stock on such basis; as to the understanding of appellants it appears that before purchasing their present holdings they made inquiry and were informed as to the nature of the preference.

The judgment should be affirmed, with costs.

VAN KIRK, Acting P. J., HINMAN and WHITMYER, JJ., concur; DAVIS, J., dissents, with an opinion.

VAN KIRK, Acting P. J. The dispute is between owners of the preferred and the owners of the common stock in respect to the right of each to share in the distribution of the capital assets. During the life of this corporation there had been a first preferred stock issued, but all of this has been retired. So that which is now called the second preferred stock is the only outstanding preferred stock. The relative rights under the two classes of stock, preferred and common, remain as fixed at the time of the incorporation. There is no statute which affects the rights here. The question here is a narrow one, namely, the construction of the certificate of incorporation. (*Lockwood* v. *General Abrasive Co.*, 210 App. Div. 141; affd., 240 N. Y. 592; 14 C. J. 422; *Equitable L. A. Soc.* v. *U. P. R. R. Co.*, 212 N. Y. 360.)

We have a stipulation in the contract in respect to the relative rights of the preferred and common stock in the distribution of capital assets. The recognized common-law rules in cases in which no preference is expressed in respect to the distribution of capital assets afford little assistance. *Continental Ins. Co.* v. *United States* (259 U. S. 156) is a case in which a preference was confined to dividends only; and the court held that, in the distribution

of capital assets, the two stocks stood equal. But the court also said (p. 181): " The cases in which a different conclusion has been reached are where the contract or law determining the rights of the preferred stockholders has an express or clearly implied restriction as to the share which they may take in the assets on liquidation." The instant case is one of the latter kind.

The lower court has held that the preferred stockholders are entitled to be first paid in full, namely, the par value of their shares, and that, this preference being satisfied, the remainder of the capital assets belongs to the common stockholders. The contention of the appellants is that the preferred stockholders are entitled to the payment of the par value of their stock; thereafter the common stockholders are entitled to the payment of the par value of their stock; and, since there will still remain capital assets for distribution, this surplus shall be distributed to the common and preferred stockholders in equal shares. They make no claim that any provision of the contract specifies what the common stockholders shall receive. In my view that contention may not be upheld. If there had been no provision in this contract in respect to the distribution of capital assets, the contention of the appellants would be erroneous; the preferred and common stockholders would then have taken equally and, if there had not been sufficient of the assets to pay both in full, they would have partaken equally in the loss. There can be no dispute that, in cases where there is no preference expressed as to the distribution of capital assets, all grades or kinds of stock participate equally. But where a preference in this respect is expressed and it is intended that that preference declares the full right of the preferred stock in the assets, the preference having been satisfied, whatever remains belongs to the common stockholders. In my view it was intended here that, when the preference was paid, the preferred stockholder had no further claim upon capital assets. This is evidenced by the expression that, upon " distribution of its assets," " the preferred stock shall be paid in full at par before any amount shall be paid on account of the common stock; " or, as expressed in the stock certificate, where the words " at par " are omitted, " the holders of the preferred stock are entitled to be paid in full before any payment is made on account of the common stock." When an obligation is paid in full nothing remains to be paid thereon. In their common and ordinary meaning the words " paid in full " mean complete payment. The trial court very aptly refers in this connection to the preference as to dividends, where it is provided that the preferred stock shall have first eight per cent, then the common stock shall have eight per cent; and, if there be further

dividend distribution of earnings, the two stocks shall share equally. If it had been intended that there should be a like preference right in the distribution of assets, it would have been expressed. Had the contract been simply that the preferred stock should have an eight per cent dividend before the common stock could have any dividend, the preferred stock could have claimed no part in the distribution of earnings beyond eight per cent. Yet, if the net earnings had justified it, a twenty per cent dividend could have been paid on the common stock and a preferred stockholder could not have successfully contested. (*Equitable L. A. Soc.* v. *U. P. R. R. Co., supra; Russell* v. *American G. & E. Co.,* 152 App. Div. 136.) It seems to me very significant that, in drafting this certificate of incorporation as to the distribution of assets, nothing was stipulated with reference to the right of a preferred stockholder after he had once been paid " in full at par; " also that nothing is said as to the right of the common stockholder in the assets after the preferred holders are paid in full. The fair inference is that the remainder goes to the common stock. Nor do I think that the expressed intention would have been different if there had been added the words " and shall receive nothing further." Such words would be an expression to " make assurance doubly sure; " would be surplusage. The right of the preferred stock having been specifically named, all further rights are excluded. (See *Niles* v. *Ludlow Valve Mfg. Co.,* 202 Fed. 141.)

There is a further consideration. These plaintiffs purchased their stock shortly before the distribution and after it was known that a sale of the assets of the corporation was to be made. These purchasers made inquiry as to what were the rights of preferred stockholders and they were informed before they purchased what the rights were, as the trial court has held. The understanding of the parties is considered by the courts as forceful in determining the intent of a contract under which they are acting. This intent is further evidenced by the fact that a majority of the stock was voted for the propositions as presented at the meetings held in contemplation of the sale of the assets and a distribution of the proceeds; also by the further fact that, of the 6,000 shares of preferred stock issued, all have been retired except 935 shares, a very large majority of the preferred stockholders having thus expressed their understanding of the contract to be as construed by the court and accepted payment accordingly.

HINMAN, McCANN and WHITMYER, JJ., concur.

DAVIS, J. (dissenting). The common-law rule is that stockholders, common and preferred, share alike in the assets of a

liquidating corporation, if the preference is only as to dividends or unless the certificate of incorporation provides a different rule. (*Continental Ins. Co.* v. *United States*, 259 U. S. 156, 181; *Hamlin* v. *Toledo, St. L. & K. C. R. Co.*, 78 Fed. 664; *Toledo, St. L. & K. C. R. Co.* v. *Continental Trust Co.*, 95 id. 497, 531; *Guaranty Trust Co.* v. *Galveston City R. Co.*, 107 id. 311, 318.)

The certificate of incorporation is the contract between the different classes of stockholders, and their rights to dividends must be determined by the language of that instrument. (*Lockwood* v. *General Abrasive Co.*, 210 App. Div. 141; affd., 240 N. Y. 592.)

The original certificate here provides: " The number of shares of which the capital stock shall consist is 20,000 of the par value of $100 each of which 6,000 shall be preferred stock and 14,000 shall be common stock." The preferred stock was given preference as to dividends to the extent of eight per cent; " and in addition, after the common stock shall have received in any year out of the earnings of the corporation declared as dividends * * * eight percentum on the outstanding common stock, the remainder of the earnings declared as dividends shall be participated in by both preferred and common stock in the same proportion. Upon the dissolution of the corporation and distribution of its assets the preferred stock shall be paid in full at par before any amount shall be paid on account of the common stock."

Subsequently an amended certificate of incorporation was duly executed and filed adding another class of. stock known as " first preferred stock," consisting of 3,000 shares of the par value of $100 each. This was given preference over the former preferred stock, now called " second preferred," and the common stock, making it entitled to cumulative dividends at the rate of eight per cent but without any right expressed to share further in dividends. It was provided further: " Upon any dissolution of the corporation and distribution of its assets, it shall be paid off and redeemed in full at par, together with any unpaid cumulative dividends thereon before any payment or distribution shall be made on account of the second preferred or the common stock."

It was also provided that " the whole of said first preferred stock, or any part thereof at any time outstanding, shall be redeemable at the option of this corporation on any dividend date after the expiration of one year from the first day of February, 1919, on ninety days' notice in writing to the holders thereof, * * * at the rate of $105 per share plus any unpaid cumulative dividends thereon; * * * and that the outstanding certificates of such first preferred stock shall be duly surrendered * * *."

The incorporators under the first certificate and the officers

executing the amended certificate seem to be to a large extent identical.

It will be observed that the preferred and common stockholders obtained shares of the same par value. After the preferred had received a non-cumulative dividend of eight per cent and the common stockholders an equal amount, they shared equally in the earnings and profits of the company. On dissolution, as in the case of dividends, the preferred shareholders were entitled to be paid in full the amount of their investment before distribution was made. to the common shareholders. The certificate is silent on the subject of the surplus remaining. If such surplus had arisen from profits of the business and had been distributed in the form of dividends it would have been paid first to the preferred shareholders to the extent of eight per cent, second to the common shareholders to an equal amount, and any remaining amount equally divided between the two classes, carrying out the expressed plan of making equal dividends between preferred and common shareholders, if the earnings amounted to more than sixteen per cent. The surplus remaining for distribution must be made up either of undistributed earnings or an unearned increment on the capital of the company.

The general plan seems to indicate that an equal division was contemplated. There was no restrictive language unless the words " paid in full at par " may be so construed. In construing language relative to preference of dividends, it will not be construed to the advantage of the preferred shareholders. (*Lockwood* v. *General Abrasive Co., supra; Niles* v. *Ludlow Valve Mfg. Co.,* 196 Fed. 994; affd., 202 id. 141; writ denied, 231 U. S. 748.) The same rule may be applied here as to the common shareholders. There is no reason why they should be more entitled to take the surplus after paying the preferred shareholders than they were to take all of the earnings after paying the preferred dividend. The whole intent of the instrument is to the contrary.

This construction is given added significance by comparing the language used in defining the original preference with that used by the same parties in the amended certificate relative to the " first preferred stock." There was no provision in the latter for further sharing in earnings after the eight per cent dividend was paid; and the language was expressed that upon dissolution the stock " shall be *paid off* and *redeemed* in full at par." That differs materially from the provision in the original certificate as to the " second preferred " which upon dissolution " shall be paid in full at par before any amount shall be paid on account of the common stock." I interpret the expression " paid in full at par " to signify

that the preferred shareholders should receive the full amount they had invested before payment on the investment of the common shareholders. There was no definite exclusion of the former from further participation in the surplus.

Where there is a limitation on the original investors in the shares of the company, whether they held stock preferred as to dividends or in distribution, it must be plainly stated in the certificate. Different language is used to make clear such restrictions, as " no further dividend or distribution " (*Russell* v. *American G. & E. Co.*, 152 App. Div. 136); " entitled to no other or further share of the profits " (*Equitable L. A. Soc.* v. *U. P. R. R. Co.*, 212 N. Y. 360); " no other participation in profits " (*Matter of National Telephone Co.*, L. R. [1914] 1 Ch. 755). This certificate lacks such definite restrictive terms, although as I have said the same parties used language in the amended certificate well adapted to exclude the " first preferred " from participating in distribution of surplus.

Under the circumstances, the silence in the certificate on the distribution of surplus upon dissolution may not be construed in favor of the common shareholders. I favor reversal.

Judgment affirmed, with costs.