[No. 39135.   Department Two.   June 13, 1968.]

*In the Matter of the Dissolution of* OLYMPIC NATIONAL
AGENCIES, INC.

JOSEPH A. ZIMMERMAN, JR., *Appellant,* v. STEPHEN S.
SELAK *et al., Respondents.**

*Reported in 442 P.2d 246.

*Bogle, Gates, Dobrin, Wakefield & Long, Orlo B. Kellogg,* and *Ronald T. Schaps,* for appellant.

*Short, Cressman & Cable, Paul R. Cressman, Donald A. Cable,* and *John H. Strasburger,* for respondents.

HUNTER, J.—This is an appeal from a decree instructing the liquidating trustee to distribute the assets of Olympic National Agencies, Inc., after the preference of the preferred stock is satisfied, to the common and preferred stockholders on a pro rata basis.

Olympic National Agencies, Inc. (hereinafter referred to as Agencies), was organized as Olympic Mutual Agencies, Inc., in 1935, with an authorized capitalization of 1,980 shares of preferred stock ($50 par value) and 2,000 shares of common stock (no par value). The initial capital of the corporation after formation consisted chiefly of (1) an exclusive agency contract with Olympic Mutual Life Insurance Company (now Olympic National Life Insurance Company) with a remaining term of 4 years, and (2) certain guaranty notes of Olympic Mutual Life Insurance Company. These assets were exchanged by the organizers for Agencies stock. After being formed, Agencies renegotiated the exclusive agency contract with Olympic National Life Insurance Company for a 20-year term and as a result the appraised value of that asset increased from $10,050 to $50,000.

In 1938, Agencies amended its articles of incorporation to increase the number of authorized preferred shares to 19,800 and the number of authorized common shares to 20,000 in connection with a 10 for 1 stock split. The par value of preferred shares was accordingly reduced to $5. Agencies stock has been issued and sold to the public and

traded on the open market, and all of the authorized shares are now outstanding. Preferred stock has been offered and sold by the corporation at par, except for certain shares sold under a 1935 application to sell stock filed with the state. A 7 per cent dividend has been paid on the preferred stock each year since 1936, with a total return of $10.40 for each $5 of par value to date of liquidation. Dividends have been paid on common stock each year since 1943, totaling $4.91 per share at the date of liquidation.

The shareholders of Agencies passed a resolution of dissolution on September 8, 1965, and elected a liquidating trustee and an alternate liquidating trustee. The assets of the corporation considerably exceed its liabilities. These assets consist of 249,580 shares of Class B common stock of Olympic National Life Insurance Company. The liquidating trustee (one of the respondents on this appeal) petitioned the trial court for instructions on October 27, 1965. One of the issues raised by the petition, and the one which concerns us on this appeal, was the matter of the respective rights, upon dissolution, of the preferred and common shareholders of Agencies.

After due notice to the interested parties and a hearing at which the appellant, the holder of the largest number of common shares, and the additional respondents, who own chiefly preferred shares, appeared, the trial court entered findings of fact, conclusions of law and a decree, which provided that the liquidating trustee should first pay $5 to each share of preferred stock, then $5 to each share of common stock and should then distribute any surplus pro rata to both classes of stock. The court based its conclusion on article V of Agencies' articles of incorporation, which reads:

> The preferred stock shall be entitled to a preferred non-cumulative dividend of seven percent (7%) per annum before any dividend shall be declared or paid on common stock. Dividends shall be out of the net earnings or surplus of the company, and shall be in such amount and payable at such times as shall be declared by the Board of Directors. The preferred stock shall further be

preferred as to the assets of the corporation up to par value.

The court also considered, in interpreting the effect and intent of this language, acts of the organizers, incorporators, directors and officers of the corporation, both before and after Agencies was formed. The court's finding of fact No. 6 concluded that these acts

> were for the most part consistent with an interpretation that all shares, both preferred and common, should participate in the assets of the company on dissolution on a *pro rata* basis . . . .

The court designated its decree an appealable order under ROA 14, and retained jurisdiction to hear and determine a motion by attorneys for the preferred shareholders for reasonable attorneys' fees. Joseph A. Zimmerman, Jr. (appellant), the individual holding the largest number of common shares, brings this appeal from the trial court's decree.

The appellant contends that the trial court erred in ruling that the preferred stock could share in the distribution of assets in excess of its stated preference. He argues that the language of article V, of the articles of incorporation, *supra*, is clearly a restriction on the preferred stock's right to participate in the corporation's assets, and that the majority of American courts which have considered the question have held that when the articles of incorporation grant a class of stock a preference as to assets this preference is presumed to be exhaustive of the stock's rights. We agree with this contention.

■ The articles of incorporation are a contract, and govern, save as statute may otherwise provide, the rights of the parties. *State ex rel. Swanson v. Perham,* 30 Wn.2d 368, 191 P.2d 689 (1948). The articles should be read in the context of the usages and practices of businessmen. As this court said in *Carroll Constr. Co. v. Smith,* 37 Wn.2d 322, 223 P.2d 606 (1950) at 331:

> " . . . Business contracts must be construed with business sense as they naturally would be understood by intelligent men of affairs and in the same sense as is uniformly attached to them by the business world."

■ It is generally recognized that a dividend preference precludes the preferred stock from participating in dividend distributions beyond the stated preference, when nothing to the contrary appears in the articles of incorporation. *Niles v. Ludlow Valve Mfg. Co.,* 202 Fed. 141 (2d Cir. 1913), *cert. denied* 231 U.S. 748, 58 L. Ed. 465, 34 Sup. Ct. 320 (1913); *Stone v. United States Envelope Co.,* 119 Me. 394, 111 Atl. 536, 13 A.L.R. 422 (1920). A prominent authority comments that:

> It seems a reasonable implication that in consideration of his preferential rights, the preferred shareholder agrees to accept his priority as to dividends as a fixed rate in lieu of further participation with the common. Such is the common understanding of the investing public . . . . Ballantine on Corporations § 216 (rev. 1946).

The analogous question before us is whether a preference precludes the preferred stock from participating in the distribution of assets beyond the stated preference upon liquidation. In *Squires v. Balbach Co.,* 177 Neb. 465, 129 N.W.2d 462 (1964), the court said at 478:

> We conclude that provisions in corporate articles and memoranda that holders of preferred stock shall be paid the par value of their stock before any liquidation dividends are paid to the holders of common stock is exhaustive and means that the preferred stock shall have its par preference on liquidation and nothing more.

The Nebraska court relied upon *Mohawk Carpet Mills v. Delaware Rayon Co.,* 35 Del. Ch. 51, 110 A.2d 305 (1954). In that case, the Vice Chancellor wrote at 55-56:

> In November 1949, the English Court of Appeals in the case of *Re Isle of Thanet Electric Co., Ltd.,* 2 All E.R. 1060, had before it on appeal the clearcut question as to whether or not a preferred stock with a specific right to share in profits after payment of a fixed noncumulative dividend on the ordinary stock, had any rights in the surplus left on a winding up over and beyond a repayment of capital plus arrears in dividends.
>
> Interpreting the holding of the House of Lords in the case of *Scottish Insurance Corporation, Ltd. v. Wilsons and Clyde Coal Company, Ltd., supra* [(1949) 1 All E.R.

1068], the Court of Appeals ruled that the language of Article 3 of the corporate charter was exhaustive.

Article 3 provided in part:

"The issued preference shares shall confer on the holders the right to a fixed cumulative preferential dividend at the rate of £6 per cent. per annum upon the amounts for the time being paid up or credited as paid up thereon respectively in priority to the ordinary shares, and the right to participate pari passu with the ordinary shares in the surplus profits which in respect of any year it shall be determined to distribute remaining after paying or providing for the said preferential dividend and a dividend for such year at the rate of six per cent. per annum on the amounts for the time being paid up or credited as paid up on the ordinary shares, and the preference shares shall confer the right in a winding-up of the company to repayment of capital, together with arrears (if any), and whether earned or not of the preferential dividend to the date of the commencement of the winding-up in priority to the ordinary shares."

This language is very similar to that in the Delaware Rayon Company charter. In both charters the terms as to dividend payments are clearly exhaustive. The English Court of Appeals, guided by the new doctrine of the House of Lords concerning rights of preference stock on dissolution laid down in the *Scottish Insurance Corporation, Ltd.* case, found that the preferred stockholders had not successfully carried the burden of showing that the provisions of Article 3, giving them only a return of capital plus arrears, was not exhaustive. The fact that dividend rights were clearly delineated so as to give the preference stock a ratable share in profits after the meeting of fixed dividend requirements, gave force to the conclusion of the English court that the preference stock was not intended to share ratably in surplus on winding up.

In the case at bar the provision giving the Class A holders cash to the amount of the par value of their stock before any payment in liquidation is made to the holders of Class B stock is clearly exhaustive. It can mean nothing other than that Class A stock shall have its $15 par preference on liquidation and nothing more. The remaining assets of Delaware Rayon Company, such as they are, must be distributed among the holders of Class B stock.

■ The articles of incorporation of Agencies resemble the charters involved in the *Mohawk Carpet Mills* case, *supra,* and the case of *Re Isle of Thanet Elec. Co., Ltd.* [1949] 2 All E.R. 1060, in that they expressly afford the preferred stock the right to participate in dividends beyond a stated preference. Thus, the absence of such a provision in regard to assets is significant. The concurring opinion in *Williams v. Renshaw,* 220 App. Div. 39, 45, 46, 220 N.Y.S. 532 (1927), explains why the New York court attached importance to such an omission:

> The trial court very aptly refers in this connection to the preference as to dividends, where it is provided that the preferred stock shall have first eight per cent, then the common stock shall have eight per cent; and, if there be further dividend distribution of earnings, the two stocks shall share equally. If it had been intended that there should be a like preference right in the distribution of assets, it would have been expressed. Had the contract been simply that the preferred stock should have an eight per cent dividend before the common stock could have any dividend, the preferred stock could have claimed no part in the distribution of earnings beyond eight per cent. Yet, if the net earnings had justified it, a twenty per cent dividend could have been paid on the common stock and a preferred stockholder could not have successfully contested. [Citations omitted.] It seems to me very significant that, in drafting this certificate of incorporation as to the distribution of assets, nothing was stipulated with reference to the right of a preferred stockholder after he had once been paid "in full at par;" also that nothing is said as to the right of the common stockholder in the assets after the preferred holders are paid in full. The fair inference is that the remainder goes to the common stock. Nor do I think that the expressed intention would have been different if there had been added the words "and shall receive nothing further." Such words would be an expression to "make assurance doubly sure;" would be surplusage. The right of the preferred stock having been specifically named, all further rights are excluded. (Citation omitted.)

We hold that, under facts such as in the instant case, where one class of stock is afforded a stated preference as

to assets on liquidation, and the articles of incorporation are silent as to any further participation, the clear implication is that the rights of the preferred stock are exhausted once the preference has been satisfied. See *Continental Ins. Co. v. United States*, 259 U.S. 156, 66 L. Ed. 871, 42 Sup. Ct. 540 (1921); *Williams v. Renshaw, supra;* Ballantine on Corporations § 217 (rev. 1946); 12 Fletcher, Cyclopedia Corporations § 5449.1, p. 278 (perm. ed. 1962).

■ The respondents argue, however, that RCW 23.01.130(3) (the applicable statute at the time the articles of Agencies were drafted), which provides:

Except as otherwise provided by the articles of incorporation, each share shall be in all respects equal to every other share.

requires our affirming the judgment of the trial court. (RCW 23.01.130(3) is no longer in force, having been replaced by the Washington Business Corporation Act, Laws of 1965, ch. 53, Title 23A, effective July 1, 1967, subject to saving clauses therein.)

This argument is without merit. The statute expressly defers to the articles of incorporation, which set forth the rights of the stockholders, as we have above determined.

The respondents further argue that the trial court's finding of fact No. 6, *supra,* based upon the acts of the incorporators and directors before and after Agencies was formed, requires that we affirm the judgment. Assuming but not deciding that the consideration of this evidence extrinsic of the articles of incorporation was proper, we find it to be indecisive and as consistent with our determination that the incorporators intended the preferences to be exhaustive as with the trial court's finding to the contrary. The intent as found from the articles, as heretofore stated, is controlling in this case.

The decree of the trial court is reversed, and the cause is remanded for further proceedings with directions that a decree be entered in conformity with our views expressed

herein. The appellants are allowed their costs on this appeal.

FINLEY, C. J., HILL and HAMILTON, JJ., and BRADFORD, J. Pro Tem., concur.